# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONA MILLER, | No. 4:18-CV-02012 |
| Plaintiff, | (Judge Brann) |
| v. | (Magistrate Judge Saporito) |
| ANDREW SAUL,[1] *Commissioner of Social Security*, | |
| Defendant. | |

## MEMORANDUM OPINION

**MARCH 31, 2020**

## I. BACKGROUND

Leona Miller filed this action seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying Miller's claim for social security disability benefits and supplemental security income.[2] The relevant medical and procedural history of this matter was set forth in some detail in Magistrate Judge Joseph F. Saporito, Jr.'s Report and Recommendation,[3] and the Court will therefore only recite facts that are directly relevant to this opinion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, as the successor officer to Nancy Berryhill, Acting Commissioner of Social Security, is automatically substituted as Defendant in this action.

[2] Docs. 1, 9.

[3] *See* Doc. 12 at 2-5, 10-12, 15-20.

In her complaint and supporting brief, Miller raises several issues with the administrative law judge's ("ALJ") decision on behalf of the Commissioner denying Miller's application.[4] As relevant here, Miller asserts that the ALJ's determination of her physical residual functional capacity ("RFC") is not supported by substantial evidence, primarily because the ALJ rejected the opinion of Doctor Rae Bacharach—Miller's treating physician—and reached the RFC without the benefit of any medical opinion to support his opinion; in short, Miller contends that the ALJ substituted his own lay opinion for competent medical evidence.[5]

In his decision in this matter, the ALJ determined that Miller had several severe impairments that interfered with her ability to work, including: carpal tunnel syndrome, polyneuropathy, obesity, bipolar disorder, and posttraumatic stress disorder.[6] Nevertheless, the ALJ concluded that Miller was not disabled, as she had the RFC to perform light work, except that she could only "frequently handle or finger with her bilateral upper extremities" and was limited "to simple, routine tasks, involving only simple work-related decisions and few, if any, work place changes," and because there were jobs in the national economy that Miller was capable of performing with that RFC.[7] In reaching this conclusion, the ALJ gave little weight

---

[4] Doc. 13.

[5] Doc. 9 at 5-6.

[6] Doc. 8-2 at 18.

[7] *Id.* at 21; *see id.* at 21-25.

to Dr. Bacharach's assessment of Miller's physical limitations after determining that his medical opinion was unsupported by Miller's medical records.[8]

In December 2019, Magistrate Judge Saporito issued a Report and Recommendation in which he recommended that this Court affirm the Commissioner's decision.[9] As to the RFC, Magistrate Judge Saporito recommends concluding that the ALJ's determination is supported by substantial evidence, as is the decision to afford little weight to Dr. Bacharach's opinion.[10] Magistrate Judge Saporito notes that an RFC determination is reserved exclusively to the ALJ and, thus, the ALJ need not rely on a medical opinion in formulating an RFC.[11] He concludes that the ALJ relied on sufficient medical information to both reject Dr. Bacharach's opinion, and to formulate an RFC.[12]

Miller filed timely objections to the Report and Recommendation,[13] raising two primary objections.[14] First, Miller reiterates her belief that the ALJ erred by eschewing the only competent medical opinion of record in favor of his own lay

---

[8] *Id.* at 24.

[9] Doc. 12.

[10] *Id.* at 12-22.

[11] *Id.*

[12] *Id.*

[13] Because Miller filed timely objections, those portions of the Report and Recommendation to which she objects are reviewed *de novo*. *Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).

[14] Doc. 13.

3

interpretation of the medical evidence.[15] Second, Miller argues that the ALJ failed to properly evaluate her subjective symptoms.[16] The Commissioner has filed a response,[17] and the matter is now ripe for consideration. For the following reasons, the Court concludes that the ALJ improperly rejected Dr. Bacharach's opinion, and Miller's objections will therefore be sustained.

## II. DISCUSSION

In an action under 42 U.S.C. § 405(g) to review the Commissioner's decision denying a plaintiff's claim for benefits, district courts must uphold the Commissioner's decision so long as it is supported by substantial evidence. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.[19]

In determining an individual's RFC, an ALJ should follow "the treating physician doctrine—a doctrine long accepted by [the United States Court of Appeals for the Third Circuit]."[20] "Pursuant to that doctrine, a court considering a claim for

---

[15] *Id.* at 1-3.

[16] *Id.* at 3-5.

[17] Doc. 14.

[18] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).

[19] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[20] *United States v. Olhovsky*, 562 F.3d 530, 548 (3d Cir. 2009) (brackets and internal quotation marks omitted).

4

disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."[21] "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another."[22] "However, when a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some [valid] reason for discounting the evidence she rejects."[23]

Here, there is one medical opinion in the record that commented upon Miller's functional abilities—the opinion submitted by Dr. Bacharach in May 2017.[24] Dr. Bacharach noted that he had been treating Miller since August 2015 and had diagnosed her with chronic sensory polyneuropathy; that condition resulted in burning and tingling sensations in Miller's hands and feet.[25] Dr. Bacharach opined that this disorder results in Miller being unable to walk for more than two blocks without resting or experiencing severe pain, and limits her to sitting for no more than

---

[21] *Id.* at 549 (internal quotation marks omitted). *See also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) (noting that a "treating physician's reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" (brackets and internal quotation marks omitted)).

[22] *Diaz*, 577 F.3d at 505 (internal quotation marks omitted).

[23] *Id.* at 505-06 (brackets and internal quotation marks omitted).

[24] Doc. 8-11 at 46-50.

[25] *Id.* at 46.

5

thirty minutes at a time and standing for no more than two hours at a time, with the caveat that she must be able to change positions at will.[26]

Miller must be able to use a cane, and can lift ten pounds frequently and up to twenty pounds occasionally.[27] Dr. Bacharach further opined that Miller would likely need four unscheduled thirty-minute breaks per day.[28] Miller is limited to only occasional twisting, stooping, or climbing stairs, and may never crouch or squat, climb stairs, or reach, finger, or manipulate objects with her hands.[29] Finally, Dr. Bacharach believed that Miller would likely miss three days of work per month due to her impairment.[30]

The ALJ rejected Dr. Bacharach's opinion that Miller can never use her hands or arms—terming it an "extreme limitation" that was unsupported by the treatment records—including electromyography tests that "confirm[ed] neuropathy and carpal tunnel syndrome but not at the level that would cause no use of the upper extremities" and "physical examinations that do not reveal objective abnormalities."[31] The Court concludes that the ALJ's determination is not supported by substantial evidence. It is true—as the ALJ observed—that many of Miller's

---

[26] *Id.* at 46-48.

[27] *Id.* at 48.

[28] *Id.*

[29] *Id.* at 49.

[30] *Id.*

[31] Doc. 8-2 at 24.

physical examinations and tests revealed mostly normal results. For example, during her physical examinations Miller frequently exhibited 5/5 strength in her extremities, normal coordination, and only a mildly abnormal gait.[32]

However, Miller's examinations also revealed high levels of pain, absent reflexes in her extremities, and progressively worsening numbness, tingling, and weakness in her extremities.[33] Critically, Miller's medical records reveal two symptoms that do not appear to have been considered by the ALJ: (1) severely decreased sensation in Miller's extremities, resulting in "almost full numbness in [her] fingers"[34] and "no feeling in [her] legs;"[35] and (2) "poor balance."[36] These symptoms caused Miller to frequently drop items, resulted in multiple falls, and caused difficulty climbing stairs.[37]

These symptoms are important in evaluating the ALJ's decision to afford little weight to Dr. Bacharach's opinion. First, the ALJ concluded that Dr. Bacharach's limitations regarding Miller's ability to use her hands and fingers were "extreme" and unsupported by the medical evidence.[38] In reaching this conclusion, however,

---

[32] Doc. 8-8 at 3, 13, 32, 44-46; Doc. 8-10 at 27.

[33] Doc. 8-8 at 2, 3, 5, 10, 13, 44-46; Doc. 8-10 at 25, 28, 39.

[34] Doc. 8-8 at 3. *See id.* at 5 (describing "progressive numbness in all extremities"); Doc. 8-10 at 28 (noting "vibration sense absent at fingers . . . toes and ankles").

[35] Doc. 8-8 at 44. *See id.* at 3, 5; Doc. 8-10 at 25, 28.

[36] Doc. 8-8 at 5; *see id.* at 10 (noting that Miller has "problems with balance, not being able to feel where the ground is").

[37] Doc. 8-8 at 5, 10; Doc. 8-10 at 39.

[38] Doc. 8-2 at 24.

the ALJ failed to account for the fact that Miller had little to no sensation in her fingers.[39] The absence of any sensation in Miller's hands is at least somewhat consistent with Dr. Bacharach's belief that Miller could not use her hands to grasp, twist, or turn objects, or to perform fine manipulations—the absence of any sensation would make it difficult to perform these tasks if one cannot feel the object that one is grasping.[40]

Similarly, evidence that Miller has poor balance and has suffered from frequent falls due to the absence of sensation in her feet is entirely consistent with Dr. Bacharach's opine that Miller may never climb ladders and only occasionally climb stairs.[41] The ALJ did not even attempt to explain why he rejected this well-supported portion of Dr. Bacharach's opinion.

Moreover, the evidence suggesting that Miller had poor balance and experienced multiple falls is consistent with Dr. Bacharach's opinion that she required a cane to ambulate.[42] Although the ALJ gave little weight to this portion of the opinion because there were no "objective abnormalities" supporting such a limitation, that simply is not true.[43] The medical evidence confirms that Miller

---

[39] The ALJ recognized only that Miller had "diminished sensation" in her hands and lower extremities. (Doc. 8-2 at 22, 23). However, Miller did not merely have diminished sensation in her hands and feet but, rather, had no sensation at all. (Doc. 8-8 at 3, 44; Doc. 8-10 at 28).

[40] Doc. 8-11 at 49.

[41] *Id.*

[42] *Id.* at 48.

[43] Doc. 8-2 at 24.

8

suffered from chronic sensory neuropathy that resulted in diminished sensation in her feet and no sensation in her toes; this in return contributed to poor balance and frequent falls.[44]

The ALJ's failure to consider those symptoms or with the medical evidence that supported Dr. Bacharach's opinion, leads the Court to conclude that the ALJ failed to consider all of the evidence and rejected Dr. Bacharach's opinion "for the wrong reasons."[45] Accordingly, the ALJ's decision is not supported by substantial evidence.[46]

Of equal importance, by rejecting the only medical opinion that offered an assessment of Miller's functional abilities, "the ALJ was forced to reach a residual functional capacity determination without the benefit of any medical opinion."[47] As judges within the United States District Court for the Middle District of Pennsylvania have frequently stated, "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[48] Where an ALJ rejects all available medical opinions, courts will generally conclude "that the ALJ impermissibly relied on speculation or lay interpretation of medical evidence to

---

[44] Doc. 8-8 at 3, 5, 10, 44; Doc. 8-10 at 25, 28.

[45] *Diaz*, 577 F.3d at 505.

[46] *Id.* at 506.

[47] *Maellaro v. Colvin*, No. 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014).

[48] *Id.* (collecting cases).

9

reach" an RFC determination.[49] Here, by rejecting Dr. Bacharach's opinion, the ALJ was forced to erroneously rely upon his own lay interpretation of the medical evidence to determine Miller's functional limitations.

The Commissioner disputes that an ALJ must rely on a medical opinion in reaching an RFC and argues instead that the ALJ alone is responsible for making a determination as to a claimant's RFC.[50] While this is true as a technical matter, commentators have explained:

> it can reasonably be asserted that the ALJ has the right to determine whether a claimant can engage in sedentary, light, medium, or heavy work. The ALJ should not assume that physicians know the Social Security Administration's definitions of those terms. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination. Of course, in such a situation a residual functional capacity determination is merely a mechanical determination, because the regulations clearly and explicitly define the various types of work that can be performed by claimants, based upon their physical capacities.[51]

---

[49] *McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015).

[50] Docs. 10, 14.

[51] Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts*, § 3:47 (2019) (emphasis added) (internal footnotes omitted). *See also Ortiz v. Saul*, No. 4:19-CV-0246, 2020 WL 1274112, at *16 (M.D. Pa. Jan. 31, 2020) ("Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support

"[T]here is a critical difference between an ALJ who resolves a conflict in medical opinions and an ALJ who rejects all of the medical opinions in favor of lay interpretation."[52] Thus, judges within this District have repeatedly rejected the notion that an ALJ may—in all but the rarest of circumstances—craft an RFC without the benefit of a supporting a medical opinion. In a thorough and well-reasoned decision, Senior United States District Judge Yvette Kane explained that that a contrary medical opinion is generally required to reject a treating physician's opinion, and that an ALJ's "lay interpretation of medical evidence as insufficient" to determine a claimant's RFC.[53] This Court sees no reasoned basis to depart from this firmly-established case law.

Certainly, as this Court expressed in *Myers v. Berryhill*, nothing "requires the ALJ to obtain matching 'opinion' evidence in order to fashion a claimant's RFC."[54] However, this statement should not be misconstrued or given greater meaning than intended, as it merely reiterates the well-established concept that, while ALJs may only rarely reach an RFC determination without the benefit of a medical opinion, there are occasions where it is appropriate to do so. Thus, in *Myers*, this Court found

---

    specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information").

[52] *Burns v. Colvin*, 156 F. Supp. 3d 579, 589 (M.D. Pa. 2016).

[53] *Burns*, 156 F. Supp. 3d at 592; *see id.* at 588-96.

[54] 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019).

it notable that the claimant did not proffer a single opinion from an acceptable medical source who opined that the claimant's functional limitations were more severe than the ALJ found.[55] Similarly, in *Ortiz v. Saul*, this Court noted that an ALJ generally may not reject all medical opinions and reach an RFC determination based on his own lay opinion.[56] However, because no medical professional had opined that the claimant had disabling limitations, remand was not required.[57]

And in *Mays v. Barnhart*, the Third Circuit affirmed the Commissioner's decision rejecting the only medical opinion of record opining as to the claimant's functional limitations—an opinion that was proffered by a non-treating physician— and noted that an ALJ "is not required to seek a separate expert medical opinion."[58] Importantly, the Third Circuit concluded that the ALJ properly rejected the medical opinion because "the record indicate[d] that [the claimant's] condition began to deteriorate sometime in 1998, after her insured status had expired" and the doctor did not examine the claimant until after her insured status had expired, rendering that opinion irrelevant.[59] Moreover, the medical records contained no evidence that

---

[55] *Id.* at 537-38.

[56] 2020 WL 1274112 at *16-17.

[57] *Id.* at *18.

[58] 78 F. App'x 808, 813 (3d Cir. 2003).

[59] *Id.* at 813 n.4.

the claimant had a disabling physical condition prior to the expiration of her insured status.[60]

Likewise, in *Kays v. Colvin*, the court was presented with "the rare occasion where [a medical opinion] was not required" to formulate an RFC.[61] There, as in *Mays*, the court noted that the ALJ properly rejected the only medical opinions of record because those opinions referenced limitations and medical findings that occurred after the claimant's insured status had lapsed and did not address the claimant's physical limitations during the relevant period.[62] Furthermore, there were no medical records that would support finding any severe physical limitations during the relevant period, and there was a treatment gap of nearly four years following the end of the relevant period.[63] Significantly, "no doctor ever opined that, during the relevant period, [the claimant] was more limited than the ALJ found her to be," and the court thus determined that remand was not warranted in that case.[64]

As these cases demonstrate, there are circumstances where it is not error for an ALJ to reach an RFC determination without the benefit of a supporting medical opinion. This, however, is not such a case. If the ALJ believed that Dr. Bacharach's opinion was inconsistent either internally or with Miller's treatment records, it was

---

[60] *Id.* at 813.

[61] No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014).

[62] *Id.* at *5-6.

[63] *Id.* at *6-8.

[64] *Id.* at *8.

incumbent upon the ALJ to inquire of Dr. Bacharach about these inconsistencies or obtain a separate medical opinion on the matter.[65] The ALJ failed to so do, and instead erroneously relied upon his own lay speculation to reach an RFC determination.[66]

## III. CONCLUSION

For the foregoing reasons, the Court will reject Magistrate Judge Saporito's Report and Recommendation, vacate the Commissioner's decision, and remand this matter for further proceedings that are consistent with this Memorandum.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[65] *See Burns*, 156 F. Supp. 3d at 592-93 (explaining that the relevant Social Security "Regulations preclude an ALJ from concluding that a treating medical opinion is 'unsupported' without recontacting the treating physician," and holding that "simply reinterpreting medical evidence to reject a treating source opinion without attempting to recontact the treating source opinion violates the ALJ's duty to develop the record").

[66] "A remand may produce different results on [Miller's remaining] claims" and, thus, the Court declines to consider those claims. *Burns*, 156 F. Supp. 3d at 598.